UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KENNI L. CHANG, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | SA-25-CV-1259-FB (HJB) |
| | § | |
| KRISTI NOEM, Secretary of the U.S. | § | |
| Department of Homeland Security; | § | |
| MIGUEL VERGARA, Field Operations | § | |
| Director of the San Antonio Immigration | § | |
| and Customs Enforcement Office; TODD | § | |
| LYONS, Acting Director of United States | § | |
| Immigration and Customs Enforcement; | § | |
| PAMELA BONDI, Attorney General of the | § | |
| United States; and BOBBY THOMPSON, | § | |
| Warden, South Texas Detention Complex, | § | |
| | § | |
| Respondents. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Kenni Chang's Petition for Writ of Habeas Corpus (Docket Entry 1), which has been referred to the undersigned for consideration pursuant to 28 U.S.C. § 636(b). (*See* Docket Entry 4.) For the reasons set out below, I recommend that the petition (Docket Entry 1) be **GRANTED IN PART** and **DENIED IN PART**.

**I.    Background.**

The relevant facts in this case are not disputed. Petitioner is a Guatemalan citizen who entered the United States without inspection in June of 2013. (Docket Entry 1, at 18; Docket Entry 10, at 2.) He was subsequently apprehended by immigration officials, issued a notice to appear at his removal proceedings, and released. (Docket Entry 1, at 18; Docket Entry 1-1, at 14; Docket Entry 10, at 2.) Petitioner failed to attend a hearing on March 20, 2018, and was ordered removed

*in absentia*. (Docket Entry 10-1, at 3.) That order has since been vacated. (Docket Entry 1, at 19 n.8; Docket Entry 10, at 2–3.)

On June 16, 2025, Immigration and Customs Enforcement ("ICE") took Petitioner into custody, where he remains to this date. (Docket Entry 1, at 19; Docket Entry 2, at 16.) On July 22, 2025, an immigration judge ordered that he be released on a $10,000 bond during the pendency of his removal proceedings. (Docket Entry 1-1, at 4–7.) Respondents appealed that order to the Board of Immigration Appeals ("BIA"), and automatically stayed Petitioner's release during the pendency of the appeal. (*Id.* at 27.) While that appeal was pending, the BIA published its opinion in *Matter of Yajure Hurtado*, which held that, under 8 U.S.C. § 1225(b)(2), all applicants for admission are subject to mandatory detention during the pendency of their removal proceedings, even those who are apprehended in the interior of the country after having entered without inspection. 29 I. & N. Dec. 216, 220–21 (BIA 2025). Bound by *Matter of Yajure Hurtado*, a one-judge panel of the BIA vacated the bond order in Petitioner's case, concluding that the immigration judge "did not have authority to consider [his] request for a bond redetermination." (Docket Entry 1-1, at 11.)

Petitioner then sought a writ of habeas corpus in this Court, seeking an order requiring Respondents to release him upon his payment of a $10,000 bond, as the immigration judge had originally ordered. (Docket Entry 1, at 22.) In his petition, Petitioner argues that, contrary to *Matter of Yajure Hurtado*, § 1225(b)(2) ? does not apply to all applicants for admission who are present in the United States without having been admitted or paroled, but only to those who are "seeking admission" into the United States when they are apprehended; as he was already present within the interior of the country when he was apprehended and not actively seeking admission, Petitioner contends that he is not subject to mandatory detention under § 1225(b)(2). (*Id.* at 9–18.) Rather, Petitioner argues that he is subject only to discretionary detention under § 1226(a), which

2

means that he was entitled to the bond redetermination he received on July 22, 2025. (*Id.*; Docket Entry 1-1, at 4–7.)

Respondents disagree. In accordance with the decision in *Matter of Yajure Hurtado*, Respondents argue that *all* applicants for admission who are present in the United States without having been admitted or paroled are subject to mandatory detention under § 1225(b), regardless of where or when they were apprehended, and irrespective of whether they were actively seeking admission into the United States at the time. (Docket Entry 10, at 3–8.)

The undersigned recently resolved a seemingly identical dispute against Respondents' position in a Report and Recommendation in another case before this Court. *Becerra Vargas v. Bondi*, No. SA-25-CV-1023-FB, 2025 WL 3300446 (W.D. Tex. Nov. 12, 2025). The Court adopted the undersigned's recommendation, and entered a final judgment ordering the petitioner's immediate release from custody. *Becerra Vargas v. Bondi*, No. SA-25-CV-1023-FB, 2025 WL 3300141 (W.D. Tex. Nov. 26, 2025). In light of *Becerra Vargas*, the undersigned ordered the parties to file advisories identifying any material differences between the two cases that might warrant a disparate result here. (Docket Entry 12.) The parties both advised that the only material difference between the two cases is that the petitioner in *Becerra Vargas* was denied a bond hearing based on *Matter of Yajure Hurtado*, whereas Petitioner was ordered released on bond before the BIA vacated said order based on *Matter of Yajure Hurtado*. (Docket Entry 13, at 1; Docket Entry 18, at 1.) Additionally, although Petitioner had originally sought an award of attorney's fees pursuant to 28 U.S.C. § 2412, he conceded in his advisory that, as *Becerra Vargas* explained, Fifth Circuit precedent forecloses the possibility of an award of attorney's fees under the Equal Access to Justice Act. (Docket Entry 13, at 1–2.) *See Becerra Vargas,* 2025 WL 3300446, at *5 (citing *Barco v. White*, 65 F.4th 782, 785 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 533 (2024)).

## II.      Discussion.

As explained above, this case turns entirely on the legal question whether, as *Matter of Yajure Hurtado* held and Respondents contend, all of those applicants for admission who are present within the United States without having been admitted or paroled, including Petitioner, are subject to mandatory detention under § 1225(b)(2).  If not, Petitioner would be subject only to discretionary detention under 8 U.S.C. § 1226(a), and therefore entitled to the bond redetermination that he received before the immigration judge.  (*Compare* Docket Entry 1, at 12–18, *with* Docket Entry 10, at 3–4.)

The Court resolved this issue when it adopted the undersigned's recommendation in *Becerra Vargas*.  Given the parties' agreement that there are no material differences between this case and *Becerra Vargas*, the disposition of this case should be largely identical to this Court's disposition of *Becerra Vargas*: Petitioner should be released and his request for attorney's fees under the EAJA should be denied.  However, in light of the prior immigration proceedings in this case, the form of release should differ slightly.  It should mirror the form of release originally ordered by Petitioner's Immigration Judge on July 22, 2025—*i.e.*, conditional release upon payment of a $10,000 bond.  (Docket Entry 1, at 22; Docket Entry 18, at 1.)

## III.     Conclusion and Recommendation.

For the reasons stated in this report, and in accordance with this Court's prior ruling in *Becerra Vargas*, 2025 WL 3300446 and 2025 WL 3300141, I recommend that Petitioner's Petition for Writ of Habeas Corpus (Docket Entry 1) be **GRANTED IN PART**, and that Respondents be **ORDERED** to release Petitioner from their custody immediately upon his payment of a $10,000 bond, subject to the same conditions ordered by his Immigration Judge on July 22, 2025.  (*See* Docket Entry 1-1, at 4–7.)  With respect to Petitioner's request for attorney's fees under the EAJA, however, I recommend that his Petition for Writ of Habeas Corpus (Docket Entry 1) be **DENIED**.

IV.     **Notice of Right to Object.**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Typically, parties must file any written objections to a Report and Recommendation **within 14 days** after their being served with a copy of the same.  However, that time period may be modified by the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In light of the deprivation of liberty at issue, and the undersigned's recommendation that Petitioner be released, the deadline is hereby truncated as follows: the parties must file any written objections **within seven days** after their receipt of a copy of this Report and Recommendation.

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on December 8, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge